IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

APRIL DANIELLE PFEIL and          :
JOHN PFEIL,                       :
                                  :
    Plaintiffs,                 :
                                  :
v.                                :
                                  :      No. 5:13-CV-434 (CAR)
MIKE'S GOLF CARTS, LLC,           :
                                  :
    Defendant.                  :
_____   :

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY AND MOTION FOR SUMMARY JUDGMENT

Plaintiffs April Danielle and John Pfeil bring this negligence and strict products liability action against Defendant Mike's Golf Carts, LLC, for injuries and damages sustained during a golf cart accident.  The case is currently before the Court on Defendant's Motion to Strike the Testimony of Plaintiffs' Expert Frank Hagan [Doc. 31] and Motion for Summary Judgment [Doc. 33] on Plaintiffs' strict products liability claim.  Having considered the Motions, the record, and the applicable law, Defendant's Motion to Exclude the Testimony of Plaintiffs' Expert [Doc. 31] is **GRANTED** to the extent explained herein, and Defendant's Motion for Summary Judgment [Doc. 33] on the strict products liability claim is **DENIED**.

## BACKGROUND

The facts relevant to the instant Motions and construed in the light most

favorable to Plaintiffs, are as follows:

On November 25, 2011, Plaintiff April Danielle Pfeil was injured in an accident while driving a golf cart on the Jewel Mill Plantation.  It is undisputed that the front mono-leaf spring, a part of the golf cart's front-end suspension, broke, causing the golf cart to flip over.  The parties' joint expert John Rinker, a metallurgist, studied the broken leaf spring and opined that the spring failed due to a fatigue crack caused by loading conditions on the golf cart.

At the time of the accident, McCarlton Partners, Ltd. ("McCarlton") owned both the Jewel Mill Plantation and the golf cart at issue in this case.  Brady and Pat Pfeil (April's in-laws) were employed as Natural Resource Managers for McCarlton and maintained the Jewel Mill Plantation.  In August 2007, Pat spoke with Mike Williams of Defendant Mike's Golf Carts, LLC and inquired about purchasing a customized golf cart showcased by Defendant at the Buckarama event in Perry, Georgia.  Following the show, Pat emailed Defendant for a quote on the cost of the customized golf cart and to ensure that the golf cart had the modifications she needed.[1]  In one particular email, Pat inquired about the weight limit for the golf cart's cargo box.[2]  Pat received a response from Defendant indicating that the box could hold nine hundred pounds, though Mr.

---

[1] Dep. of James Michael Williams, Ex. 3 [Doc. 36-3] ("Williams Dep.").
[2] *Id.*

Williams does not know if that weight limit is accurate.[3]

On September 1, 2007, Defendant purchased a used 2002 Club Car limo golf cart from Mr. Golf Carts to serve as the base of McCarlton's customized golf cart.[4]  The original 2002 Club Car was a two-passenger, electric cart with a mono-leaf spring in the front and back.  The 2002 Club Car, as originally designed, was not intended to be driven off-road.  Mr. Golf Carts stretched the Club Car to allow additional seating and then sold it to Defendant.  Thereafter, Defendant installed a cargo box, roll bar, dipped camo body, cooler rack, winch, eleven horse power motor, 700 amp controller, heavy duty F and R switch, ten-inch lift kit, clay basket, gun rack, as well as twelve-inch rims, six 8-volt batteries, and 27-inch tires.  The parties dispute whether the customized golf cart was a "Beast Buggy model" or the accessories added were part of Defendant's "Beast Package."  The parties, however, agree on the specific modifications Defendant made to the cart.

Four years prior to the accident, on November 19, 2007, McCarlton purchased the customized golf cart from Defendant to assist with tasks around the Jewel Mill Plantation, including, *inter alia*, hauling 55-gallon barrel feeders and hauls for hunting. Unlike the original 2002 Club Car, the cart, as modified by Defendant, could be driven off-road.  Brady handled all the minor repairs on the golf cart and sent it to a mechanic

---

[3] *Id.* at 77:1-22, Ex. 3.
[4] Aff. of James Michael Williams ¶ 3 [Doc. 35-2].

for all major repairs.[5]  In August or September 2008, the front mono-leaf spring on the cart broke while Pat and Brady's son was driving it.  Pat called Defendant and ordered a new spring, which Defendant then shipped directly to Pat.  Brady replaced the spring himself with the new leaf spring sent by Defendant.  After Brady replaced the leaf spring in 2008, it did not break again until the accident on November 25, 2011.

## PROCEDURAL HISTORY

Following the accident, Plaintiffs brought this suit, claiming that Defendant's extensive modifications to the golf cart overloaded the front mono-leaf spring and caused the accident. In Counts I and II of the Complaint, Plaintiffs bring both negligence and strict products liability claims, alleging that Defendant improperly designed, manufactured, marketed, and sold the golf cart and failed to warn consumers about the risks associated with use of the customized golf cart.  In Count III, Plaintiff John Pfeil asserts a loss of consortium claim. In Count IV, Plaintiffs seek punitive damages.  Defendant timely answered and denied liability.  Thereafter, Defendant filed five notices of non-party fault in accordance with O.C.G.A. § 51-12-33(d), on the grounds that Brady Pfeil; McCarlton; Club Car, LLC; Mr. Golf Carts, Inc.; and John Doe are wholly or partially at fault for Plaintiffs' alleged injuries and damages.

Following the close of discovery, Plaintiffs and Defendant both moved for

---

[5] The golf cart had an extensive service history which the Court will not detail here because it is irrelevant to the issues at hand.

summary judgment.  Plaintiffs sought summary judgment on the issue of non-party fault, arguing no evidence shows any acts or omissions of the non-parties specified by Defendant caused the accident.  Defendant also moved for summary judgment on all of Plaintiffs' claims, arguing that no act or omission on its part caused the accident. Defendant further argued that it did not come within the purview of Georgia's strict products liability statute and therefore could not be held liable on Count II of the Complaint.  In addition, Defendant moved to strike the testimony of Plaintiff's expert, Frank Hagan, as well as a portion of the testimony proffered by John Rinker.

On July 17, 2015, the Court held a hearing on these Motions.  Having the benefit of oral argument and considering the evidence of record, the Court ruled on most of the issues presented and took the following two issues under advisement:

(1) Whether Frank Hagan may testify regarding whether Defendant had a duty to and failed to investigate the cause of the leaf spring failure in 2008; and

(2) Whether Defendant is entitled to summary judgment on Plaintiffs' strict products liability claim.

The Court allowed the parties additional time after the hearing to fully brief the first issue.  Having received those briefs, the issues presented are now ripe for ruling.

## DISCUSSION

### I.      Motion to Strike Frank Hagan's Testimony

The first issue before the Court is whether Plaintiffs' expert Frank Hagan should

be permitted to opine that Defendant had a duty to and failed to investigate the cause of the leaf spring's failure in 2008, a year after Defendant sold the golf cart. Both parties submitted post-hearing briefs on this issue. In addition to addressing this specific issue, Plaintiffs move the Court to reconsider its prior ruling prohibiting Hagan's testimony regarding Defendant's failure to warn purchasers of the golf cart's load-carrying capacity.

## A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and it states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. [6]

Simply stated, under Rule 702, the trial court can admit relevant expert testimony only if it finds that: (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the

---

[6] Fed. R. Evid. 702.

application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.[7]

## B. Analysis

### 1. Defendant's Duty/Failure to Investigate Leaf Spring Failure in 2008

In his supplemental report, Hagan states "[Defendant] was made aware that a problem existed with the front mono-leaf spring approximately three years prior to the accident," but "took no actions to investigate the root cause of the mono-leaf spring failure."[8]  He opines that Defendant should have investigated the spring failure in 2008 when Pat and Brady called Defendant to order a replacement spring.[9]  The Court finds Hagan's proffered testimony must be excluded because it is unclear whether Defendant even had a duty to investigate based on these facts.  Moreover, even if a duty did arise, Hagan's opinion is unreliable.

Plaintiffs fail to cite a case, and the Court is not aware of one, that would impose a duty on Defendant to investigate the 2008 spring failure based solely on a telephone order for a replacement part.  Whether a duty of care exists is a question of law derived from statute or common law.[10]  As such, expert testimony "cannot create a legal duty

---

[7] *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (citing *Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001)); *J & V Dev., Inc. v. Athens-Clarke Cnty.*, 387 F. Supp. 2d 1214, 1223 (M.D. Ga. 2005).

[8] Suppl. Report of Frank E. Hagan, p. 2 (Dec. 18, 2014) [Doc. 31-3].

[9] Dep. of Frank Hagan, pp. 160-64 [Doc. 36-1].

[10] *Diamond v. Dep't of Transp.*, 326 Ga. App. 189, 195 (2014).

7

were none existed before."[11]  Since the law fails to show a duty to investigate on the facts here, Hagan is not permitted to testify that such a duty existed.

Moreover, Hagan's opinion that Defendant was made aware of a problem with the front mono-leaf spring on the golf cart in 2008 is based on insufficient data.  Hagan bases that opinion on the fact that Pat called Defendant to order a new spring, and Defendant shipped the replacement spring directly to her. Apart from these facts, Hagan does not know with whom Pat spoke, or what information she provided to Defendant regarding the circumstances surrounding the spring's failure.  In fact, there is little evidence showing Defendant knew the replacement spring was for the golf cart at issue in this case.  Therefore, Hagan's testimony regarding what Defendant knew in 2008 regarding the leaf spring's failure is based solely on speculation rather than a sound foundation and is thus unreliable.[12]

Accordingly, Defendant's Motion to Exclude Hagan's Testimony regarding whether Defendant failed to or had a duty to investigate the leaf spring failure in 2008 is granted.

---

[11] *Id.*

[12] *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993) (noting that expert testimony under 702 "connotes more than subjective belief or unsupported speculation.").

2.   **Defendant's Failure to Warn**

Plaintiffs also request that the Court reconsider its ruling prohibiting Hagan from testifying about Defendant's failure to warn owners of the golf cart's load-carrying capacity.   In support of their request, Plaintiffs cite to *Calhoun v. Yamaha Motor Corporation*.[13]   In *Calhoun*, the court allowed the plaintiff's expert, a human factors engineer, to testify generally about how to design a proper warning on a jet ski based on his knowledge of psychology and human factors and his review of the record.[14] Similarly, Plaintiff argues Hagan ought to be allowed to testify that Defendant should have communicated some sort of warning without specifying the substance of that warning.

Having considered Plaintiffs' arguments, the Court declines to alter its previous ruling at this point.   As the Court expressed at the hearing, the Court has reservations regarding Hagan's qualifications, the reliability of his opinion on warnings, and whether his opinion will assist the trier of fact.   Unlike the expert in *Calhoun*, Hagan does not have expertise in the field of human factors—he is a mechanical engineer who specializes in system failures.   Moreover, his opinion is based on insufficient data and testing.   Hagan opines that Defendant failed to warn purchasers of the golf cart's load-carrying capacity, but he failed to test the golf cart to determine the load capacity

---

[13] 350 F.3d 316 (3d Cir. 2003).
[14] *Id.* at 322-23.

himself. Because Hagan does not specify what the load-carrying capacity is, the Court is concerned his testimony is too vague to assist the trier of fact.[15] The Court will, however, revisit this issue at the pretrial conference, if necessary.

## II.   Defendant's Motion for Summary Judgment on the Strict Products Liability Claim

The last issue remaining is whether Defendant is entitled to summary judgment on Plaintiffs' strict products liability claim.

### A.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]   A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[17]   Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[18]   When ruling on a motion for summary judgment, the Court must view the

---

[15] *See McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (finding theory "too vague" to assist the trier of fact).

[16] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[18] *See id.* at 249-52.

10

facts in the light most favorable to the party opposing the motion.[19]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[20]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[21]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[22]

### B.  Analysis

Georgia's strict products liability statute creates a cause of action against "[t]he manufacturer of any personal property sold as new property" if "the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."[23]  Case law dictates that this statute "must be strictly construed."[24]

---

[19] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[20] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

[21] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.

[22] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[23] O.C.G.A. § 51-1-11(b).

[24] *Daniel v. Am. Optical Corp.*, 251 Ga. 166, 167 (1983).

In this case, Defendant argues it is entitled to summary judgment on Plaintiffs' strict products liability claim because Defendant is not a "manufacturer," and the golf cart does not constitute "personal property sold as new property."[25] In response, Plaintiffs argue that Defendant is a manufacturer because it assembled the "Beast Buggy" and sold it as new property.  Construing the facts in the light most favorable to Plaintiffs, the Court cannot find as a matter of law that Defendant is not a manufacturer of personal property sold as new property.

Under Georgia law, a "manufacturer" refers to someone who falls in one of three categories: "(a) an actual manufacturer or designer of the product; or (b) a manufacturer of a component part which failed and caused the plaintiff injury; or (c) an assembler of component parts who then sells the item as a single product under its own trade name."[26] "[M]anufacturers are those entities that have an active role in the production, design, or assembly of products," not entities "that ha[ve] no real role in the creation of products, such as those who merely label a product as their own."[27]  A "product seller" by contrast, is not subject to strict liability.[28] A product seller is any person who "sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles

---

[25] Defendant also argues that Plaintiffs' strict liability claim fails because there is no evidence that any act or omission by Defendant caused the accident.  The Court, however, addressed and rejected Defendant's causation argument at the motions hearing, finding a genuine issue of material fact exists as to whether Defendant's modifications to the cart caused the spring to break.

[26] *Freeman v. United Cities Propane Gas of Georgia, Inc.,* 807 F. Supp. 1533, 1539 (M.D. Ga. 1992) (citation omitted).

[27] *Buchan v. Lawrence Metal Products, Inc.,* 270 Ga. App. 517, 520-21 (2004).

[28] O.C.G.A. § 51-1-11.1(b).

pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce."[29]

Defendant argues that it cannot be a manufacturer because it did not design a new product or assemble component parts into a single product and then sell that product under its own trade name.  Instead, Defendant contends it merely added prefabricated accessories to an already existing golf cart.  There is evidence in the record, however, from which a jury could find that Defendant assembled component parts, one of which was a Club Car Limo, to create the "Beast Buggy"—a repurposed vehicle built to go off road.[30]  In that regard, a jury could find that the Beast Buggy is similar to the all-terrain vehicle in *Yaeger v. Stith Equipment Company*.[31]  In *Yaeger*, the defendant assembled a carrier and auger, individual parts manufactured by other entities, into one vehicle, which rolled over while the plaintiff was operating it.[32]  The Georgia Court of Appeals held that it could not find as a matter of law that the defendant was not a manufacturer, noting that the defendant made modifications to the components to meet

---

[29] O.C.G.A. § 51-1-11.1(a).

[30] *Cf. Nestlehutt v. Am. Indus. Chem. Corp.*, No. CIV.A. 1:03-CV-1054O, 2005 WL 6033021, at *5 (N.D. Ga. May 5, 2005) (finding defendant was a manufacturer of chemical drum when defendant assembled final product by taking a drum, "a raw material of sorts," and then cleaning, filling, and labeling it with its new contents).

[31] 177 Ga. App. 835 (1986).

[32] *Id.* at 835.

the specifications of its customer.[33]  The *Yeager* court, however, also noted that there was no direct evidence that the vehicle carried the defendant's name.[34] An assembler of component parts can only be a "manufacturer" if it sells a single product under its own trade name.[35]  Taking the facts in the light most favor to the plaintiff, the *Yaeger* court denied summary judgment on the products liability claim.[36]

As in *Yaeger*, the Court finds genuine issues of material fact exist here.  Like the defendant in *Yaeger*, there is evidence Defendant took component parts manufactured by other entities, one of which was a Club Car limo, and assembled them to create its Beast Buggy.  In addition, Defendant modified the cart per McCarlton's requests.  There is, however, a conflict in the evidence as to whether Defendant's product carried its "Beast Buggy" name. For example, Mr. Williams referred to the cart as a Beast Buggy, which he further defined as a cart that typically comes with a specific list of components selected and installed by Defendant.  However, neither Pat nor Brady referred to the golf cart as the Beast Buggy.  Moreover, the invoice does not refer to the cart as the Beast Buggy but merely lists the component parts.[37] The jury must weight this evidence to determine if Defendant was a manufacturer or merely accessorized an existing golf

---

[33] *Id.* at 837.

[34] *Id.*

[35] *Abee v. Stone Mountain Mem'l Ass'n*, 169 Ga. App. 167, 171 (1983) *aff'd*, 252 Ga. 465 (1984).

[36] *Yaeger*, 177 Ga. App. at 837; *see also Abee*, 169 Ga. App. at 171 (finding issue of material fact existed as to whether defendant company that built a water slide according to another company's design was a manufacturer because there was no evidence one way or the other as to whether defendant sold the components as a single product under its trade name).

[37] *See* Ex. 2 [Doc. 38-1].

cart. Because the evidence conflicts as to whether Defendant assembled component parts into a single product and sold it under its own name, the Court cannot conclude as a matter of law that Defendant is or is not a manufacturer.

In addition, an issue of material fact exists as to whether the golf cart constitutes "personal property sold as new property." The statute itself does not define what constitutes "personal property sold as new property," and there is a dearth of case authority on the issue. Georgia law, however, has defined "new" in other contexts to mean "something which has been 'neither damaged nor used to any significant extent.'"[38] Although the 2002 Club Car limo was five years old at the time Defendant purchased it, there is no evidence beyond Mr. Williams' own statement that he bought the Club Car limo "used," demonstrating whether it was damaged or used to any significant extent at the time Defendant sold it.

Moreover, the products liability statute is not limited to the manufacturing of "new property." Rather, by its terms, it applies to the manufacturing of "any personal property <u>sold as</u> new property."[39] It is unclear from the record what representations, if any, were made to Pat regarding whether the subject cart was "used." Mr. Williams testified that he generally tells customers if their golf carts are used, but he cannot recall whether that information was relayed to Pat when she bought the golf cart at issue in

---

[38] *Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F. Supp. 1578, 1583 (N.D. Ga. 1994) (quoting *Horne v. Claude Ray Ford Sales, Inc.*, 162 Ga. App. 329, 329 (1982)).
[39] O.C.G.A. § 51-1-11(b) (emphasis added).

this case.  Because genuine issues of material fact remain as to whether Defendant is a manufacturer of personal property sold as new property, Defendant's Motion for Summary Judgment on Plaintiffs' strict products liability claim is denied.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Exclude the Testimony of Plaintiffs' Expert Frank Hagan [Doc. 31] on the duty to investigate issue is **GRANTED**, and the Court declines to reconsider its prior ruling on warnings.  Additionally, Defendant's Motion for Summary Judgment [Doc. 33] on the strict products liability claim is **DENIED.**

**SO ORDERED,** this 14th day of September, 2015.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT